IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHAEL DAVID FILLPOT,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **KILOLO KIJAKAZI, Acting** ) <br> **Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br> **Defendant.** ) | Case No. CIV-22-18-GLJ |

## OPINION AND ORDER

Claimant, Michael David Fillpot, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a

1

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was forty-three years old at the time of the administrative hearing (Tr. 42). He completed the fifth grade, acquired his GED, completed two years of vocational schooling, and is a certified machinist. (Tr. 49). He has past relevant work experience as a Dough Mixer. (Tr. 31). Claimant alleges an inability to work since an Amended Onset date of June 4, 2020, due to Crohn's disease, colitis, back issues, and schizophrenia. (Tr. 43, 287).

### Procedural History

On June 4, 2020, Claimant protectively applied for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. His applications were denied initially and upon reconsideration. On May 12, 2021, Administrative Law Judge ("ALJ") Michael Mannes conducted an administrative hearing in McAlester, Oklahoma, and entered an unfavorable written decision on June 4, 2021 (Tr. 19-33, 41-81). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for the purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation (Tr. 31). At step two he determined that Claimant had the severe impairments of traumatic compression fracture of the L2 lumbar vertebra, status post gunshot wound to the right foot, colitis and Crohn's disease, substance use, depression, anxiety, and schizophrenia. (Tr. 21). He also

3

found Claimant had the nonsevere impairments of urticaria, dental abscess, dental caries, corneal abrasion, iron deficiency, leukocytosis, sepsis affecting the skin, tobacco use, and cutaneous abscess of the left knee. *Id.* He found at step three that Claimant did not meet any Listing (Tr. 22). At step four, the ALJ found that Claimant had the Residual Functional Capacity ("RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except he can frequently balance, occasionally climb ramps stairs, ladders, ropes, and scaffolds; can occasionally kneel, crouch, and use foot controls with the right lower extremity; and can focus for two-hour periods with routine work breaks, interact with supervisors and co-workers for incidental work purposes, and respond appropriately to gradual and infrequent changes in a routine work setting, but cannot interact with the general public. (Tr. 24). The ALJ then concluded that Claimant retains the RFC necessary to return to his past relevant work as a Dough Mixer as it is generally performed in the national economy, and he was therefore not disabled. (Tr. 31-32). The ALJ also found in the alternative that there are other jobs that exist in significant numbers in the national economy that Claimant can perform, *e.g.,* power screw driver, small product assembler, and electrical accessory assembler. (Tr. 31-32).

### Review

Claimant contends that the ALJ erred by failing to perform a proper analysis at steps three, four, and five. More specifically, Claimant contends that the ALJ: (i) failed to consider listing 12.03 (schizophrenia and impulse control disorders) in the step three analysis, (ii) failed to perform a proper step four analysis, and (iii) failed to properly

identify alternative jobs at step five. The Court finds these contentions unpersuasive as discussed below.

The ALJ found at step two that Claimant had the severe impairments of traumatic compression fracture of the L2 lumbar vertebra, status post gunshot wound to the right foot, colitis/Crohn's disease, substance use, depression, anxiety, and schizophrenia. (Tr. 21). As to Claimant's mental impairments, the medical evidence reveals a history of substance abuse and mental illness. On February 26, 2018, Dr. Kathleen Ward performed a psychological consultative exam during which Claimant appeared to be actively suffering from inhalant intoxication, making any diagnosis difficult. (Tr. 427-31). She found Claimant suffered from an unknown substance intoxication, inhalant abuse, cannabis abuse, methamphetamine use disorder, and alcohol use disorder. *Id.* She also noted antisocial personality disorder, dependent personality disorder, and an unspecified mood disorder with an "R/O" or "Rule Out" notation. *Id.* She concluded that Claimant's prognosis might improve with intensive mental health and substance dependency treatment and that he would be unable to manage his own benefits. *Id.* On February 2, 2020, Claimant presented voluntarily to McAlester Regional Health Center with paranoia, auditory hallucinations, suicidal ideation, and homicidal ideation. (Tr. 544). He reported routine methamphetamine use and noncompliance with all his medications as well as suffering from a superficial gunshot wound in the foot two weeks prior when he dropped a loaded firearm during a paranoid episode. (Tr. 558). Dr. David Auld spent the week treating Claimant for paranoid schizophrenia until he was discharged to Carl Albert Community Mental Health Center ("Carl Albert") on February 11, 2020. (Tr. 544-71, 653). He

remained at Carl Albert in inpatient care under Dr. Tad Bowden through February 26, 2020. (Tr. 648-51). Claimant was discharged with his suicidal ideation, homicidal ideation, and paranoid delusions resolved and his auditory hallucinations dramatically decreased and well controlled with medication. *Id.* At discharge, he was diagnosed with Amphetamine Induced Psychotic Disorder, Amphetamine Dependence, Cannabis Dependence, and Antisocial Personality Disorder, with additional physical impairments. (Tr. 650).

Claimant returned to Carl Albert on March 16, 2020, following a brief incarceration that interrupted his medication regimen. (Tr. 645-47). Claimant was seen for auditory and visual hallucinations as well as suicidal ideation by Dr. Lori Peters who referred him to outpatient care. *Id.* Dr. Peters saw Claimant again on April 2, 2020, when he was transferred from McAlister Regional Health Center and admitted to inpatient care for auditory hallucinations, suicidal ideation, and depression. (Tr. 642-44) Claimant was discharged after three weeks with his auditory hallucinations and suicidal ideation resolved. (Tr. 638-40). Claimant reported that his medications were effective at controlling his symptoms during an outpatient visit on May 1, 2020, though on June 30, 2020, he reported an uptick in auditory hallucinations. (Tr. 624-27). Outpatient follow-ups at Carl Albert in August, October, and December of 2020 show Claimant doing well with no auditory or visual hallucinations and no suicidal or homicidal ideation. (Tr. 681-84). During a March 2021 follow-up, Claimant endorsed no suicidal or homicidal ideation and that any auditory or visual hallucinations were manageable. (Tr. 704).

State examiners determined initially and upon reconsideration that Claimant had moderate limitations in understanding, remembering, or applying information, in

6

interacting with others, in concentrating, persisting, or maintaining pace, and in adapting or managing himself. (Tr. 100-01, 123-25). Additionally, they determined Claimant had the RFC to perform medium work and could perform simple tasks under routine supervision, focus for two-hour periods with routine breaks, persist through a normal work schedule, adapt to occasional changes in a work environment, and interact appropriately with coworkers and supervisors, but should avoid contact with the public. *Id.*

At the administrative hearing, Claimant testified that he lost his driver's license following a vehicular accident and is dependent on his wife for transportation, but generally does not go out. (Tr. 48). Prompted by Claimant's answers and slurred speech, the ALJ asked Claimant multiple times if he was under the influence of anything that would affect his ability to testify, which he consistently denied. (Tr. 47, 51, 56). He did testify, however, that he was currently on probation for the sale of narcotics and had last used methamphetamine and marijuana a few months ago, but had been clean for two years prior to that incident. (Tr. 49, 52, 58). Claimant then testified that he underwent mental health treatment at Carl Albert in February 2020 for hallucinations and paranoia and had been using methamphetamines two-three times a week directly before treatment. (Tr. 56-59). Claimant further testified that he spends eighteen hours a day sleeping, that the medication he takes around bedtime makes him tired, and that he spends the remaining time in his day either watching television, playing video games, or doing chores. (Tr. 63,70) Claimant testified he goes to Carl Albert monthly for medication refills, does not see a counselor, and suffers from auditory hallucinations every few weeks. (Tr. 65, 67). Finally, he testified

that he takes his medication daily and that his wife maintains a daily pill-organizing container to help him with his medication regimen. (Tr. 70).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs a claimant could perform given an individual with Claimant's age and education, with an RFC limited to light work who can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally kneel, crouch, and use foot controls with the right lower extremity, can frequently balance, and is limited to simple tasks with routine supervision over two-hour periods with routine work breaks, can respond appropriately to changes in a routine work setting that are gradually introduced and infrequent, and can interact with supervisors and co-workers for incidental purposes, but could not interact with the general public. (Tr. 74-75). The VE indicated that such a person could perform Claimant's past relevant work as it is normally performed but not as Claimant actually performed it, and also indicated three light jobs that this person could perform, namely: (i) power screwdriver operator, DICOT § 611.685-026, with approximately 150,000 jobs available nationally; (ii) small product assembler, DICOT § 706.684-022, with approximately 70,000 jobs available nationally; and (iii) electrical accessory assembler, DICOT § 729.687-010, with approximately 60,000 jobs available nationally. *Id.* The ALJ then offered a modified hypothetical limited to sedentary work with allowances for frequent unscheduled work breaks and absences, and the VE answered that no jobs would meet that hypothetical. (Tr. 75-76).

In his written opinion at step three, the ALJ stated that he considered listings 1.15, 1.16, 1.18, 5.06, 12.04, 12.06, and 12.08. (Tr. 22-23). In assessing the "paragraph B"

criteria for the Listings related to mental impairment, he determined that the claimant had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in his ability to concentrate, persist, or maintain pace; and moderate limitations in his ability to adapt or manage himself. (Tr 23-24). Because he did not find Claimant had an extreme limitation or two marked limitations, he found the "paragraph B" criteria not satisfied. (Tr. 24). The ALJ also states that he finds the "paragraph C" criteria are not satisfied. *Id.* At step four, the ALJ summarized Claimant's hearing testimony, as well as the medical evidence in the record, including a detailed summary of Claimant's mental health treatment. The ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms inconsistent with the longitudinal record. (Tr. 30). He then noted that Claimant's history of mental health difficulty shows periods of stability during adherence to prescribed treatments. (Tr. 30)

### I.   Step Three Evaluation

Claimant first contends that the ALJ erred in his step three evaluation by not expressly considering Listing 12.03 (Schizophrenia and impulse control disorders). Although Claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation

9

omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why Claimant was not disabled at step three. *Id., citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986). However, the ALJ's failure to make specific findings at step three can be harmless error when "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three." *Fischer–Ross*, 431 F.3d at 735. A reviewing court may thus "supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34. (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

In this case, the ALJ found that Claimant's impairments did not meet or equal any listing at step three, and specifically considered Listings 12.04 (Depressive, bipolar, and other related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.08 (Personality and impulse-control disorders) in his written decision. (Tr. 23-24). Claimant asserts the ALJ erred because he did not specifically mention or discuss Listing 12.03 (Schizophrenia spectrum and other psychotic disorders) at step three and notes evidence relevant to that listing.[2] In order to satisfy the requirements of Listing 12.03, a claimant

---

[2] Listing 12.03 contains the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.03 (effective April 2, 2021, to February 17, 2023). In order to meet listing 12.03, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria. *Id.* The "paragraph B" criteria" requires proof that the claimant has an extreme limitation of one,

must meet the paragraph A medical documentation criteria and either the paragraph B functional criteria or the paragraph C criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.03 (effective April 2, 2021, to February 17, 2023). Assuming *arguendo* that the claimant meets the medical documentation criteria for Listing 12.03, any error the ALJ may have made in failing to expressly address this listing is harmless because the paragraph B and C criteria for Listing 12.03 are identical to the criteria in Listing 12.04, and 12.06, that the ALJ *did* address.[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00A(2), 12.03, 12.04, 12.06, (effective April 2, 2021, to February 17, 2023). Thus, the ALJ's analysis of the paragraph B and C criteria (and his conclusion that neither criteria were met) for purposes of Listing 12.04 and 12.06 is also substantial evidence that Claimant does not meet Listing 12.03, and "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless." *Fischer-*

---

or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The "paragraph C" criteria requires that Claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of his daily life. *Id.*

[3] For both Listing 12.04 and 12.06 the "paragraph B" criteria" requires proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1 §§ 12.04, 12.06. The "paragraph C" criteria of both listings requires that Claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of his daily life. *Id.*

*Ross*, 431 F.3d at 735. *See, e.g., Cromwell v. Colvin*, 2013 WL 6800821, *5 (W.D. Okla. Dec. 20, 2013) (finding the substantive evaluation for Listing 12.04 applies equally to Listing 12.02); *Bernal v. Berryhill*, 2018 WL 1960117, *2 (D.N.M. April 26, 2018) (finding any failure to consider Listing 12.02 harmless error because the claimant could not have met the requirements of Listing 12.02 in light of the ALJ's analysis of Listings 12.04, 12.05, and 12.06).

## II.     Step Four Evaluation

Claimant next asserts that the ALJ erred at step four by finding he could return to his past work as a dough mixer without performing a proper analysis in accordance with *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). Under *Winfrey*, there are three distinct phases to step four. *Id.* at 1023. The ALJ must first establish Claimant's RFC, then determine the physical and mental demands of his past relevant work ("PRW"), and finally decide if his RFC enables him to meet those demands. *Id.* The ALJ must specify his factual findings at each phase, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* at 1025

### A. RFC Formulation

Claimant asserts that the ALJ erred in the formulation of Claimant's RFC by failing to include any mental limitations and by failing to account for the waxing and waning of Claimant's mental health. Neither assertion has merit. The assertion that the ALJ did not include any mental health limitations fails on its face as the ALJ specifically notes in the Claimant's RFC that Claimant can only understand, remember, and carry out simple tasks

with routine supervision, is not to interact with the general public, and can only adapt to changes in routine when they are infrequent and gradually introduced. (Tr. 24). These limitations are work-related mental functions. *See Jaramillo v Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) ("[T]he abilit[y] . . . to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting . . . are examples of work-related mental functions.") (internal quotations omitted).

Claimant's contention that the ALJ does not consider the waxing and waning of his condition in establishing his RFC is similarly without merit. Claimant introduces this argument by conceding that the ALJ, in the consistency analysis section of his opinion, recognized Claimant's history of exacerbation and improvement of symptoms. Indeed, the ALJ concludes that section by noting "the [RFC] limitations are supportive of periods of exacerbation . . . but also of mild to benign mental status exams when compliant with treatment[]." (Tr. 30). While Claimant may certainly disagree with the RFC conclusions of the ALJ, this is not grounds for reversal. *See Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005). ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."). *See also Yount v. Colvin*, 2015 WL 733908, at *5 (N.D. Okla. Feb. 20, 2015) (finding that evidence of an ALJ's awareness that a claimant's symptoms wax and wane cannot be contradicted by mere assertion.) ("Yount also argues the ALJ, in concluding that Yount made inconsistent statements regarding her condition, ignored that some of her symptoms wax and wane. To the contrary, the hearing transcript shows the ALJ was fully aware that

13

symptoms wax and wane."). The Court finds no error in the ALJ's formulation of Claimant's RFC.

### B. Demands of Past Relevant Work

Claimant next contends that the ALJ erred at the second phase of the analysis by failing to elicit adequate evidence about the demands of Claimant's PRW. Here, the ALJ elicited testimony about the social requirements for the Claimant's PRW as he performed it but made no mention of any other physical or mental requirements. (Tr. 73-75). The Court finds the VE's testimony as to the exertional and skill level of the Claimant's PRW insufficient to meet the demands of phase two of step four. *See, e.g., Sissom v. Colvin*, 512 F. App'x. 762, 768-69 (10th Cir. 2013) (the ALJ "failed to develop the record with 'factual information' regarding the claimant's past relevant work" by relying solely on VE testimony as to the exertional level and skill level of the claimant's past relevant work because such "limited testimony . . . is insufficient to determine the physical and mental work demands of [the claimant's] [past relevant work]."), *citing Winfrey*, 92 F.3d at 1024. Thus, the ALJ was without any evidence as to the physical and mental demands of Claimant's past relevant work as it is customarily performed in the national economy. *See, e.g., Westbrook v. Massanari*, 26 F. App'x. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate where the record is "devoid of even any mention of the demands of past relevant work.").

Ordinarily, this would be reversible error under *Winfrey*, but here it is harmless in light of the ALJ's alternative step five findings of other jobs existing in significant numbers that the claimant could perform. As demonstrated below, the ALJ's step five findings were

proper, and thus his *Winfrey* error became harmless. *See Martinez v. Astrue*, 316 F. App'x. 819, 824 (10th Cir. 2009) ("Because we conclude, as discussed in the next section, that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. Contrary to Ms. Martinez's argument, her capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes.").

### III. Step Five Evaluation

Finally, Claimant contends that the ALJ erred in identifying jobs Claimant could perform because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DICOT") as well as a conflict regarding the reasoning levels in the identified jobs. Under Social Security Ruling 00-4p, "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DICOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." 2000 WL 1898704 at *4 (Dec. 4, 2000). Although the VE did not identify any conflict between her testimony and the DICOT, Claimant contends that one of the jobs identified does not exist and that the reasoning level of the remaining jobs conflicts with Claimant's limitation to simple, repetitive tasks. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DICOT]

and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The first job, power-screwdriver operator, is incorrectly attributed by the VE as DICOT § **611**.685-026, which does not exist. The correct DICOT is § **699**.685-026. *See* 1991 WL 678865. While Claimant is correct that the expert misidentified the number for this job, the intended job is apparent from the testimony and the error is harmless. *See Bowie v. Colvin*, 2016 WL 4718016, at *2 (E.D. Okla. Sept. 9, 2016) (finding the vocational expert's identification of the incorrect DICOT number for a job was harmless error).

Additionally, Claimant argues that he is unable to perform the other jobs listed by the VE as they both have a reasoning level of two and that this is beyond his ability. The two other jobs the ALJ identified, small product assembler and electrical accessory assembler, require a worker to "[a]pply commonsense understanding to carry out detailed by uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT § 706.684-022, 729.687-010.  Claimant asserts that this reasoning level is incompatible with a person only able to carry out simple, repetitive tasks with routine supervision. The Court agrees with the Commissioner, however, that a reasoning level of two *is* consistent with performing simple, repetitive tasks, and that other courts have reached the same conclusion. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation

to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). The Court thus finds no error here.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). Accordingly, the decision of the Commissioner is hereby affirmed.

**Conclusion**

In summary, the Court finds that the correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 6th day of March, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**